UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NINA PORTER
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-522
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the Commissioner's response in opposition (Doc. 23), and plaintiff's reply memorandum (Doc. 27).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI on September 24, 2009, alleging disability since March 15, 2007 due to bipolar disorder, post-traumatic stress disorder (PTSD), depression, and panic attacks. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Larry A. Temin. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On January 10, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

    B.    **The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

    1. The [plaintiff] meets the insured status requirements of the Social Security Act through June 30, 2007.

    2. The [plaintiff] has not engaged in substantial gainful activity since March 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

    3. The [plaintiff] has the following severe impairments: lumbosacral spine degenerative disc disease/facet arthropathy; posttraumatic stress disorder (PTSD); a mood disorder; and obsessive-compulsive disorder (OCD) (20 CFR 404.1520(c) and 416.920(c)).

    4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, she can perform work activity except as follows: The [plaintiff] can lift/carry/push/pull up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for a total of 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; only occasionally stoop, kneel, crouch, or climb ramps or stairs; never crawl or climb ladders, ropes, or scaffolds; and never work at unprotected heights or around hazardous machinery. Her job should not require concentrated exposure to fumes, noxious odors, dusts, or gases. Due to her mental impairments, she is able to remember and carry out detailed but uninvolved instructions. Her job should also not require an inflexible work pace, or more than ordinary and routine changes in work setting or duties. She cannot interact with the general public,

and her job should not require more than superficial and minimal interaction with coworkers or supervisors.

6. The [plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7. The [plaintiff] was born [in] . . . 1981, and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and can communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[1]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from March 15, 2007, through the date of this decision (20 C.F.R. 404.1520(g)) and 416.920(g)).

(Tr. 22-34).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 9,100 unskilled, light jobs in the regional economy, such as cleaner/housekeeper, bench assembler, and inspector/packer. (Tr. 33, 79-80).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred by not addressing medical opinion evidence of record; (2) the ALJ's residual functional capacity (RFC) formulation lacks substantial support because it does not accurately portray plaintiff's functional abilities over time; and (3) the ALJ erred in finding that plaintiff was not credible. (Doc. 10).

1. <u>Whether the ALJ erred by not addressing medical opinion evidence of record</u>.

For her first assignment of error, plaintiff argues that this matter must be reversed and remanded because the ALJ failed to address medical opinion evidence from Pamela Petrocy, M.D., an orthopedist who examined plaintiff in September 2009. Plaintiff maintains that the

5

ALJ committed reversible error when he wrongly stated that the only medical opinion regarding plaintiff's physical RFC was that of state agency reviewing physician C. Leigh, M.D., (Tr. 470-77) because Dr. Petrocy submitted a form (Tr. 450-51) at the request of the Social Security Administration wherein she opined that plaintiff had specific physical limitations resulting from her impairments. Plaintiff maintains that under Social Security Regulations and Sixth Circuit precedent, the ALJ's failure to address Dr. Petrocy's opinion requires that this matter be reversed and remanded. (Doc. 16 at 6-9).

The ALJ's decision includes the following discussion of plaintiff's back impairment. The ALJ determined that plaintiff had severe lumbosacral spine degenerative disc disease/facet arthropathy due, in part, to mild degenerative disc and facet disease as evidenced by a September 2009 MRI. (Tr. 22-23, citing Tr. 359). The ALJ noted that plaintiff attempted various modalities of pain relief including epidural steroid injections and pain medication, which failed to provide long-term relief. (Tr. 23, citing Tr. 415-18, 583-610). The ALJ discussed evidence related to a spinal cord stimulator that plaintiff had implanted in October 7, 2010, and plaintiff's subsequent reports of 90% pain relief due to the implant. (*Id.*, citing Tr. 584). The ALJ also addressed evidence from an October 22, 2011 emergency room examination reflecting that plaintiff had no back pain or focal weakness in her arms or legs. (*Id.*, citing Tr. 695). The ALJ found that this October 2011 examination was inconsistent with plaintiff' hearing testimony from December 8, 2011, that the implant was no longer providing her pain relief. (*Id.*, citing Tr. 50). *See also* Tr. 30.

State agency reviewing physician Dr. Leigh reviewed the record and completed a Physical Residual Functional Capacity Assessment form on March 31, 2010. (Tr. 470-77). Dr. Leigh

opined that plaintiff was capable of performing "light work" with some limitations.[2] (*Id.*). Specifically, Dr. Leigh determined that plaintiff could frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and never climb ladders, ropes, or scaffolds. (Tr. 472). In support of her opinion, Dr. Leigh cited to: findings that plaintiff suffered from facet arthropathy, radiculopathy, degenerative disc disease and lumbar spondylosis with radiculopathy; plaintiff's complaints of back pain; evidence of multiple acute injuries; plaintiff's use of steroid injections to relieve pain; examination findings that were within normal limits aside from pain; reduced range of motion in her lumbar spine; and plaintiff's height and weight which equated to a body mass index (BMI) of 42. (Tr. 471). Dr. Leigh found that plaintiff was fully credible as her allegations regarding the severity of her pain were consistent with her conditions, but noted that most of the alleged limitations were attributed to her psychological impairments. (Tr. 475).

The ALJ gave "significant weight" to Dr. Leigh's opinion. (Tr. 31). The ALJ found that the limitations assigned by Dr. Leigh were consistent with plaintiff's benign medical record that consisted mainly of acute injuries. (*Id.*). The ALJ adopted Dr. Leigh's limitations in formulating plaintiff's RFC, and included additional environmental limitations in consideration of plaintiff's respiratory complaints. (*Id.*). The ALJ later stated that "[t]here are no other medical . . . assessments from either a treating or examining source in the record." (Tr. 32). Review of the record establishes that the ALJ erred in characterizing the evidence of record.

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

7

As stated above, the record includes an additional medical opinion from Dr. Petrocy regarding plaintiff's functional limitations. Dr. Petrocy, an orthopedist, examined plaintiff on September 29, 2009, pursuant to a referral from plaintiff's family practitioner to assess the cause of plaintiff's low back pain. Plaintiff reported a history of low back pain, recently increased, which radiated to her left leg along with numbness and tingling in the left leg. Plaintiff described the pain as "dull with sitting, and stabbing with ambulation, and that straightening the leg" made the pain worse. Plaintiff's gait was very antalgic on the left and Dr. Petrocy noted that plaintiff bent to the right while seated and standing to take pressure off the left leg. Plaintiff had full painless symmetric range of motion in both hips, but positive straight leg raise both laying on the left; negative on the right. Sensation was grossly intact to light touch and symmetric bilaterally and plaintiff had full 5/5 strength in her right leg, 3/5 strength in the left secondary to pain. Dr. Petrocy reviewed a September 14, 2008 MRI showing a small central disc protrusion at L5-S1 with loss of disc height and moderate bilateral facet hypertrophy with mild left foraminal stenosis. Dr. Petrocy diagnosed plaintiff with facet arthropathy and radiculopathy and recommended epidural steroid injections. (Tr. 448).

On February 16, 2010, Dr. Petrocy completed a form at the request of the Social Security Administration. Dr. Petrocy recounted her examination findings, diagnosis, and recommended treatment, and put forth her opinion regarding plaintiff's physical functional limitations. Specifically, Dr. Petrocy opined that plaintiff was not able to bend, lift from floor level, twist, or stoop. (Tr. 450-51).

When an ALJ fails to mention relevant evidence in his decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v.*

8

*Secretary of Health & Human Servs.*, Case No. 86–5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir. 1981)). The ALJ's decision makes no mention of the treatment record or opinion from Dr. Petrocy which contradicts Dr. Leigh's opinion and the ALJ's determination that plaintiff is able to occasionally stoop. Further, the ALJ's RFC does not include any limitations regarding plaintiff's ability to bend, lift from floor level, or twist. Given the ALJ's erroneous statement that Dr. Leigh's opinion was the only medical opinion in the record regarding plaintiff's physical functional abilities, it appears that the ALJ overlooked, ignored, or rejected these records. The ALJ committed an error of law when he failed to comply with his duty to weigh Dr. Petrocy's opinion in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Blakley*, 581 F.3d at 407. Because the ALJ provided no explanation for not addressing this evidence, which directly contradicts his RFC formulation, remand is required to allow the ALJ to fully consider these records. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 750 (6th Cir. 2007).

Nevertheless, the Commissioner contends that the ALJ was not required to discuss Dr. Petrocy's opinion as "there is a distinction between what an ALJ must consider and what an ALJ must cite to in a written decision." (Doc. 23 at 5). In support, the Commissioner cites to *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 243 (6th Cir. 1992) (citing *Walker v. Sec'y of H.H.S.*, 884 F.2d 241, 245 (6th Cir. 1989)), where the Sixth Circuit determined that courts may consider all evidence of record when reviewing the ALJ's decision regardless of whether it was discussed by an ALJ.[3] The Commissioner contends that *Sullivan* supports her proposition that

---

[3] The Court notes that *Sullivan* involved review of a decision made by the Secretary of Health and Human Services regarding the price of seat lift chairs furnished to Medicare beneficiaries, and not whether an ALJ had appropriately weighed medical opinion evidence in assessing a disability claim. *See Sullivan*, 978 F.2d at 237.

the ALJ was not required to address the evidence from Dr. Petrocy because he "expressly addressed an array of evidence relating to [p]laintiff's back pain" and "was not required to discuss each piece of evidence under his consideration." (Doc. 23 at 5). This argument turns the rationale of *Sullivan* on its head. This issue presented here is not whether the Court may consider the evidence from Dr. Petrocy in evaluating whether the ALJ's decision is supported by substantial evidence, but whether the ALJ erred by failing to address this evidence in the first instance. The ALJ had a clear duty to consider, evaluate, and weigh Dr. Petrocy's medical opinion, *see* 20 C.F.R. §§ 404.1527(b)(c), 416.927(b)(c), and his statement that Dr. Leigh's opinion was the sole medical opinion on plaintiff's physical limitations establishes that he did not and constitutes legal error. The ALJ's failure to resolve the conflict between the opinion evidence of record regarding plaintiff's physical abilities requires that this matter be remanded. *See Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 538 (6th Cir. 2014) (citing *Walker*, 884 F.2d at 245 and *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)) (while the Court may look to portions of the record not discussed or cited to by the ALJ, it may not resolve conflicts in the record evidence).

Accordingly, plaintiff's first assignment of error should be sustained.

2. <u>Whether the ALJ erred in formulating plaintiff's RFC</u>.

Plaintiff's second assignment of error challenges the ALJ's failure to consider whether she was disabled for the closed period of time after the alleged onset date to the date she received the spinal cord stimulator implant, or to formulate a separate RFC for this period. Plaintiff maintains that the ALJ's rationale supporting his RFC formulation for light work was largely predicated on his analysis of the medical evidence showing that her back pain was significantly

10

reduced after she received the implant. Plaintiff claims that the objective and clinical medical evidence establishes that her back impairment and pain were documented as early as January 2007 and, because she did not receive the implant until October 2010, the ALJ erred by not assessing her RFC from her alleged onset date in March 2007 to October 2010. Plaintiff further asserts the ALJ erred in formulating the RFC because he did not properly account for her obesity and its impact on her other impairments. (Doc. 16 at 10-13).

In her response in opposition, the Commissioner does not address plaintiff's specific arguments but, instead, generally responds that the ALJ's RFC formulation is substantially supported by the record evidence, including Dr. Leigh's opinion and the normal examination findings of record. (Doc. 23 at 4-6).

In consideration of the ALJ's error as determined above in connection with plaintiff's first assignment of error, the Court finds that the ALJ's RFC formulation lacks substantial support as it was formulated without consideration of Dr. Petrocy's medical opinion. The ALJ's failure to address the evidence from Dr. Petrocy requires that he reassess plaintiff's RFC on remand. Notably, the Commissioner has not responded to plaintiff's specific arguments nor does she contend that the ALJ's RFC formulation is substantially supported by the evidence of record. This matter should therefore be remanded with instructions to the ALJ to address the effects of plaintiff's obesity on her functional limitations[4] and consider whether plaintiff may be

---

[4] The undersigned notes that the ALJ mischaracterized the medical evidence of record in his discussion of plaintiff's obesity. In determining that her obesity did not medically equal a listed impairment, the ALJ cited to Social Security Ruling 02-01p which explains that a claimant's obesity can medically equal a listing where, for example, it results in limitations such as an inability to walk effectively. (Tr. 26). The ALJ stated that there was no finding in the record that plaintiff was unable to ambulate effectively at any material time. (*Id.*). This statement is contradicted by Dr. Petrocy's examination finding that plaintiff had a very antalgic gait. *See* Tr. 448. Accordingly, remand is appropriate to allow the ALJ to reassess the impact of plaintiff's obesity on her impairments in consideration of Dr. Petrocy's examination findings.

11

entitled to a closed period of disability for the period preceding the cord stimulator implantation, as well as the entire period in question.

Plaintiff's second assignment of error should be sustained.

3. <u>Whether the ALJ's credibility determination is substantially supported</u>.

For her final assignment of error, plaintiff asserts the ALJ erred in assessing her credibility. As stated above, the undersigned recommends that this matter be remanded for consideration of the opinion evidence from Dr. Petrocy and for reassessment of plaintiff's RFC. As resolution of these issues on remand may impact the remainder of the ALJ's sequential evaluation, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's third assignment of error had merit, the result would be the same, *i.e.*, a remand for further proceedings and not outright reversal for benefits. Accordingly, plaintiff's third assignment of error should be sustained.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinion of Dr. Petrocy and reassessment of plaintiff's RFC and credibility consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 9/30/14

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NINA PORTER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-522
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).